**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PAMELA C. BAIR,                )
                                 )    Judge Sean J. McLaughlin
             Plaintiff,     )    Magistrate Judge Susan Paradise Baxter
v.                        )    C.A. No. 9-05 Erie
                                 )
COMMISSIONER OF SOCIAL SECURITY,  )
                                 )
             Defendant.   )
                                 )

**REPORT AND RECOMMENDATION**

SUSAN PARADISE BAXTER, United States Magistrate Judge

**I.      Recommendation**

Plaintiff, Pamela C. Bair, brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for disability insurance benefits ("DIB") under title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. Plaintiff filed a motion for remand based on new evidence on October 2, 2009. (Doc. No. 12). Plaintiff also filed a motion for summary judgment (Doc. No. 16) and brief in support (Doc. No. 17) on November 2, 2009. The Commissioner filed a cross-motion for summary judgment (Doc. No. 18), and brief in support (Doc. No. 19) on December 1, 2009. For the following reasons, it is respectfully recommended that Plaintiff's motion for summary judgment be granted insomuch as it requests a remand for further proceedings not inconsistent with this opinion. It is further recommended that Plaintiff's motion for remand be denied as moot and the Commissioner's motion for summary judgment be denied.

**II.      Report**

Plaintiff protectively filed for DIB on February 21, 2006 alleging disability due to herniated discs in her neck and stenosis with an alleged onset date of November 5, 2004. (R. 99, 102). Her claim was denied at the state agency level on August 3, 2005. (R. 41). Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (R. 53). A hearing was held before ALJ William Vest on June 5, 2008. (R. 374-407). Plaintiff, who was represented by counsel, appeared at the hearing and testified on her own behalf. (R. 378-398). An impartial vocational expert also testified. (R. 398-407). The ALJ issued a decision on July 11, 2008, finding that Plaintiff was not disabled within the meaning of the Act. (R. 12-27). The Appeals Council subsequently denied Plaintiff's request for review, thereby making the decision of the Commissioner final in this case. (R. 4-6). Plaintiff now seeks review of that decision by this Court.

A.     **Facts**

Plaintiff was forty-nine years old at the time of the hearing, and therefore was defined as a "younger individual," age 18-49, pursuant to 20 C.F.R. §§ 404.1563. (R. 99). Plaintiff obtained a GED and her prior work includeds employment as inspector at a plastic parts factory, a housekeeper, a janitorial supervisor, and a day care center worker. (R. 25, 103-104).

Plaintiff underwent a cervical MRI on November 2, 2004, which showed disc herniations centrally at C4-5, C5-6, and C6-7. (R. 184). The spinal cord was effaced at C4-5 centrally and to a milder extent at C5-6. *Id*. Plaintiff was referred to Dr. John Flamini, a neurologist, by her family practitioner, Dr. Jeffrey Start. (R. 196). Plaintiff reported neck pain, and numbness, paresthesia, and dysesthesia in the first few digits of her right hand. (R. 180).

2

Dr. Flamini performed nerve conduction studies in Plaintiff's right arm, which revealed mild Tinel's sign and mild Phalen's sign. *Id*. Dr. Flamini concluded that the tests revealed no evidence of radiculopathy and very mild medial neuropathy of the right wrist as evidence of mild carpal tunnel syndrome. *Id*. He prescribed a two week treatment of anti-inflammatory medications and follow-up with an orthopedist if necessary. *Id*.

On December 30, 2004, Plaintiff was evaluated by Diane Adiutori, CRNP, and Dr. Richard Mendel, a neurologist. (R. 177). Ms. Adiutori performed a physical examination noting normal strength and grips with positive Phalen's sign on the right. (R. 179). Plaintiff was assessed with disc herniations at C4-5, C5-6, and C6-7 with no nerve root impingement. (R. 177). Plaintiff was prescribed a six week course of physical therapy and prescribed Flexeril, a muscle relaxant. *Id*. Plaintiff underwent twelve physical therapy treatments in January and February 2005, but experienced no relief from her symptoms. (R. 174, 177-178). Plaintiff returned to Dr. Mendel on February 22, 2005. (R. 176). Dr. Mendel opined that the medical literature did not support surgery for neck pain and recommended an increase of her Motrin and an evaluation by Dr. Thomas for cervical joint facet injections. *Id*.

Plaintiff was evaluated by Dr. James Kang, a neurological surgeon, on March 14, 2005 at the request of Dr. Start. (R. 21, 321). Plaintiff reported numbness and tingling in her right hand and neck pain. (R. 321). On examination, Dr. Kang noted a normal gait, "very limited" range of cervical motion, dull pinprick on the right C6 dermatome, and slight hyperflexia but negative Babinski sign, Hoffman sign, and clonus sign. (R. 322). Review of Plaintiff's MRI revealed the same findings as noted by her previous physicians. *Id*. Dr. Kang assessed classic multi-level stenosis caused mostly by a radicular syndrome. He recommended

an anterior corpectomy with an allograft fibular strut fusion. *Id*. Plaintiff's cervical corpectomy at C5 and C6, allo-graft fibular strut fusion at C3 through C7, and posterior cervical fusion at C3 through C7 was performed on April 21, 2005. (R. 246-248). Dr. Kang's post-operative diagnosis was multilevel cervical stenosis, C3 through C7 with spinal cord compression and cervical radiculopathy. (R. 246).

X-rays of Plaintiff's cervical spine in May 2005 showed an uncomplicated fusion and posterior stabilization. (R. 251). Plaintiff returned to Dr. Kang on May 20, 2005 for follow-up. Overall, Dr. Kang noted that she was doing "quite well" with relief of arm pain, but she was having difficulty sleeping. (R. 312). Dr. Kang placed Plaintiff on Elavil for her nervousness and sleep and continued her Vicodin with the instruction to slowly taper the medication. *Id*. She was also given a cervical collar. *Id*. Plaintiff was seen again on July 1, 2005 at which time she reported mechanical neck pain and tiredness. (R. 309). He noted that she was experiencing a "little" withdrawal from the narcotics and had some delayed recovery due to her continued smoking. X-rays showed a "beautifully healing" cervical fusion. *Id*. Physical therapy was ordered. *Id*. Plaintiff attended physical therapy from July through November of 2005. (R. 273-289).

On August 3, 2005, Plaintiff records were reviewed by a state agency medical evaluator, Tamela Coscoran. (R. 271-277). Ms. Coscoran opined that Plaintiff was capable of occasionally lifting twenty pounds and frequently lifting ten pounds; standing or walking for six hours out of a eight hour work day; sitting for about six hours out of an eight hour work day; was unlimited in her ability to push and pull; and was occasionally able to climb, balance, stoop, kneel, crouch, and crawl. (R. 272-273).

4

On October 3, 2005, Plaintiff returned to Dr. Kang with complaints of mechanical neck pain. (R. 308). Dr. Kang noted that Plaintiff had not quit smoking and was working full time. On examination, Plaintiff's cervical range of motion was mechanically stiff, but her neurological status was still normal. *Id*. Dr. Kang opined that the pain was related to Plaintiff's fusion still trying to complete itself and he again warned her of the effects of smoking on fusion healing. *Id*. Plaintiff returned to Dr. Kang on March 20, 2006. (R. 307). Plaintiff reported an increase in the her neck pain. On examination, her cervical range of motion was mechanically stiff, but her neurological status was normal. *Id*. Dr. Kang ordered a new MRI to rule out a further disc herniation and prescribed Flexeril and a soft neck collar "to rest her neck at the end of the day." *Id*.

Plaintiff's records were reviewed on June 1, 2006 by Sonia Clover, a state agency medical evaluator. (R. 323-329). Ms. Clover opined that Plaintiff was capable of occasionally lifting twenty pounds and frequently lifting ten pounds; standing or walking for six hours out of a eight hour work day; sitting for about six hours out of an eight hour work day; and was unlimited in her ability to push and pull. *Id*. On the same date, Dr. Manella Link, a psychiatrist completed a psychiatric review technique after a review of Plaintiff's records. (R. 330). He opined that Plaintiff was experiencing depressive symptoms secondary to her pain. (R. 333). Dr. Link suggested that Plaintiff had mild limitations in her activities of daily living and in concentration, persistence, and pace and no difficulties in social functioning. (R. 340).

On July 20, 2006, Plaintiff was evaluated by Dr. Rodney Bingham, a pain management specialist, at the request of Dr. Start. (R. 352-353). Plaintiff reported that her extremity numbness resolved post-surgery but that she was experiencing cervicothoracic

bilateral pain that worsened throughout the day. (R. 352). She noted that the pain was constant, sharp, aching, and throbbing. *Id*. Plaintiff's physical examination was normal except for a limited cervical range of motion in the left and right and limited cervical flexion and extension. (R. 353). Plaintiff was diagnosed with cervical post-laminectomy syndrome and cervical radiculitis. *Id*. Dr. Bingham noted that Plaintiff's pain seemed to be mainly "somatic in etiology." *Id*. He recommended that analgesic management was the most appropriate option with the use of an electrical stimulation device. He noted that he had no other treatment to offer at the time. *Id*.

Plaintiff was examined by Dr. Thomas Mroz, a spine surgeon, on October 25, 2006. (R. 345). Plaintiff reported neck pain that was worse with motion. On examination, Dr. Mroz noted paraspinal atrophy, lack of extension, tenderness, and pain. *Id*. A CT scan was ordered. *Id*. Plaintiff was again examined by Dr. Bingham on February 12, 2007. (R. 351). Dr. Bingham noted Plaintiff's visit to the Cleveland Clinic to see Dr. Mroz and noted that she had discontinued care with Dr. Kang. *Id*. Plaintiff reported pain in the lower cervical spine with radiation into the left shoulder and mandibular discomfort. *Id*. She also reported headaches that were increasing in frequency. *Id*. Plaintiff's examination was normal except for tenderness elicited on palpitation of the lower cervical and upper thoracic spine area and limited cervical rotation. *Id*. Dr. Bingham opined that management with conservative treatment was producing moderate improvement. He further opined that treatment with ibuprofen had provided "significant symptom control" but that the pain had become progressive in intensity and frequency. *Id*. Plaintiff was given a prescription for cervical facet injections. *Id*.

Plaintiff returned to Dr. Bingham on March 5, 2007 and reported "appreciated pain" on the right in the shoulder and the arm to the elbow with a pain level of eight out of ten. (R. 350). Dr. Bingham did not change his diagnoses from the prior visit and opined that conservative management and intervention management had not been maximized. In conjunction with this opinion, he prescribed a Medrol dose pack, an electrical stimulation device, a facet branch block, and Lyrica, as a pain management agent. *Id*. Plaintiff returned for a cervical facet median branch block at C3-C4 and C4-C5 on March 16, 2007. (R. 349). Plaintiff had a follow-up on March 26, 2007 and reported that the pain had decreased to a three out of ten, but was aggravated by standing activities in her home. (R. 348). She also reported a pricking sensation progressing to a severe ache. She noted using Vicodin and Flexeril at night. *Id*. Dr. Bingham noted a "significant response" to the facet block and suggested Plaintiff might experience more long term relief with radiofrequency thermocoagulation. *Id*. She was continued on her medications. *Id*.

Plaintiff was examined by Dr. Start on June 12, 2007 for complaints of chronic low back pain. (R. 360). Dr. Start noted that the pain was having a detrimental effect on her concentration, mentation, motivation, mood, self-esteem, sleep, and family life. *Id*. Dr. Start also reported anxiety, depression, stress, and mood swings. *Id*. On examination, Plaintiff's gait was antalgic with a right-sided limp; pain was elicited over the third and fourth spinal process; crepitus was palpitated; and range of motion was limited ten to fifteen degrees and flexion to twenty to thirty degrees in the back and neck. (R. 361-362). Dr. Start opined that Plaintiff was "having some pain in her lower spine from overall deconditioning" and would "benefit from some simple daily exercise." (R. 362). He also discussed the effects of depression on pain, but

did not feel it was the right time to have a full discussion on the matter due to Plaintiff's negative reaction. She was continued on Flexeril and her other medications. *Id*.

On September 4, 2007, Plaintiff returned to Dr. Bingham to discuss the effectiveness of her prior facet block. (R. 347). Plaintiff reported that her pain was moderately relieved for several weeks but that the pain then reoccurred in the same place and of the same quality. *Id*. She noted pain ranging from a four to five out of ten to a ten out of ten. Upon examination, motor strength, grip, coordination, and range of motion in the shoulders, elbows, and wrists were all normal. *Id*. Tenderness was present over the right shoulder and over the entire cervical spine with significantly limited cervical rotation and flexion and extension. *Id*. Dr. Bingham again recommended radiofrequency thermocoagulation. *Id.*

Plaintiff returned to Dr. Start on December 11, 2007 for left shoulder and neck pain. (R. 357-359). Plaintiff reported that she was getting some relief from one half to one whole Norco a day. *Id*. Plaintiff noted that she felt her pain was bad enough that she should apply for disability permanently and brought along a form from her attorney. Dr. Start referred her to Dr. Kolade on the issue of disability. *Id*. Dr. Start reported that her pain had a detrimental impact on her concentration, mentation, motivation, mood, self-esteem, sleep, family life, and functionally impaired sitting, walking, riding in a vehicle, and mobility. *Id*. Dr. Start noted that Plaintiff's posture included not raising her upper arm greater than ninety degrees, not rotating in a side bend flex and not extending her neck more than a few degrees in any direction. (R. 358-359). Dr. Start prescribed a small amount of hydrocodone/APAP and Norco and warned Plaintiff of the narcotic qualities of both. *Id*.

### B.     Hearing Testimony and ALJ's Opinion

On June 5, 2008, Plaintiff, who was represented by counsel, testified at the hearing before ALJ William Vest. Plaintiff testified that she ceased working due to numbness in her arm and significant pain in the back of her neck. (R. 378). She asserted that the corrective procedure of April 2005 did not cause improvement and that she continued to experience numbness and had developed chronic pain with headaches and pain in the ears and jaw. (R. 378-379, 380). Plaintiff noted that she could walk and would walk around her neighborhood, once in awhile, during the week. (R. 380). Plaintiff further testified that she could do some housework, including dishes and laundry, watched TV, read, played cards, drove, cooked, shopped, and went to church. (R. 381-382, 386). Plaintiff contends that she can lift five pounds and can sit for about twenty minutes before needing to stretch and move. (R. 382).

With regard to medications, Plaintiff testified to taking Flexeril, Hydrocodone, and ibuprofen with a little bit of relief. (R. 383). She noted that the medicines would make her drowsy. (R. 392). She also testified that she needed to lie down during the day to relieve her pain. *Id*. Plaintiff reported that she could stand still for about twelve to thirteen minutes and could drive for about fifteen to twenty minutes before needing to readjust her position. (R. 393-394). She testified to difficulties concentrating and focusing due to pain and headaches. (R. 397, 398).

On July 11, 2008, the ALJ rendered a decision which was unfavorable to Plaintiff under the five-step sequential analysis used to determine disability. (R. 15-27). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 5, 2004. (R. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: cervical stenosis and degenerative joint disease. (R. 17). At step three, the ALJ concluded that

Plaintiff's impairments did not meet or equal one of the listed impairments set forth in 20

C.F.R. 404 Subpart P, App. 1. (R. 19). At step four, the ALJ determined that Plaintiff was

unable to return to any past relevant work. (R. 25.) At step five, the ALJ concluded that the

government had met its burden to show that Plaintiff had the residual functional capacity to

work. (R. 19). He assessed her residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b). Light
> work involves occasionally lifting no more than 20 pounds at a
> time with frequent lifting or carrying of ten pounds with pushing
> and pulling of objects of equivalent stipulated weights.
> Specifically, the claimant is capable of sitting for up to six (6)
> hours out of an eight (8) hour workday and she is capable of
> standing and/or walking for up to six (6) hours out of an eight (8)
> hour workday. In the performance of work activity, the claimant
> should be allowed to alternative between sitting and standing as
> needed. The claimant is capable of occasionally bending,
> stooping and squatting with no climbing. She is to perform no
> work at unprotected heights and no work that involves hazardous
> situations that might cause harm to self or others, such as work
> with dangerous machinery or work at unprotected heights.
>
> She is capable of understanding, remembering, and carrying out
> simple instructions and performing simple tasks as consistent
> with unskilled work activity. She is limited to the performance of
> low stress jobs. The undersigned notes that occasional is defined
> to mean occurring from very little up to one-third of an eight-hour
> workday (cumulatively, not continuously) and is consistent with
> the meaning in the Dictionary of Occupational Titles. The
> claimant has no significant communicative, environmental,
> manipulative, or visual limitations and minimal mental
> limitations as noted. The claimant is able to perform sustained
> work activity on a regular and continuous basis for eight hours
> per day, forty hours per week with normal breaks being sufficient.

(R. 19-20). Consequently, the ALJ found that Plaintiff was not under a disability within the

meaning of the Act. (R. 20)**.**

C.  **Standard of Review**

The Act limits judicial review of disability claims to the Commissioner's final decision.  42 U.S.C. § 405(g).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).  The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a scintilla of evidence, but less than a preponderance.  *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920 (1995).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work.  *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112,  118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period."  *Kangas v.*

*Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in

two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he
> or she suffers from one or more of a number of serious impairments delineated in 20
> C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S.
> 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,

> (2) in the event that claimant suffers from a less severe impairment, by
> demonstrating that he or she is nevertheless unable to engage in "any other kind of
> substantial gainful work which exists in the national economy . . . ." *Campbell*, 461
> U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first

demonstrate the existence of a medically determinable disability that precludes plaintiff from

returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it

is shown that claimant is unable to resume his or her previous employment, the burden shifts to

the Commissioner to prove that, given claimant's mental or physical limitations, age, education

and work experience, he or she is able to perform substantial gainful activity in jobs available

in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v.

Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

### D.  <u>Discussion</u>

Plaintiff makes several related arguments in her motion for summary judgment and

motion for remand. Generally, she argues that the ALJ's residual functional capacity evaluation

was unsupported by substantial evidence. In support of this argument, Plaintiff contends that

the ALJ erred in rejecting Plaintiff's complaints of pain and functional limitations, mistakenly

concluding that Dr. Start's most recent report showed a resolution of symptoms, selectively

relying on a few objective findings to find that Plaintiff's symptoms had resolved, ignoring the

medical evidence of Dr. Mroz, and in giving significant weight to the two state agency

evaluators. In her second argument, Plaintiff asserts that the ALJ erred at step two in finding

her depression was non-severe. Finally, Plaintiff argues, in her motion for remand, that this

case should be remanded due to an omitted medical record from April 25, 2007. The

Commissioner argues that Plaintiff has failed to prove that she is disabled and that the decision

of the ALJ is, therefore, supported by substantial evidence.

> *1.     Residual Functional Capacity Assessment*

Plaintiff argues that the ALJ erred in his determination of her residual functional

capacity. Specifically, she contends that the ALJ ignored, misinterpreted, or gave inappropriate

weight to a good deal of the evidence of record. The Commissioner responded by arguing that

the ALJ properly incorporated all of Plaintiff's functional limitations into his residual

functional capacity assessment.

"'Residual functional capacity'[RFC] is defined as that which an individual is still

able to do despite the limitations caused by his or her impairment(s).'" *Burnett,* 220 F.3d at

121(quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).  A claimant's RFC

represents the most, not the least, that a person can do despite his or her limitations.  *See*

*Cooper v. Barnhart*, 2008 WL 2433194, at *2 n.4 (E.D.Pa., June 12, 2008) (citing 20 C.F.R. §

416.945(a)).  In determining a person's RFC, an administrative law judge must consider all the

evidence of record. 20 C.F.R. §§ 404.1520, 416.920.  Although an administrative law judge can

weigh the credibility of the evidence when making a RFC determination, he or she must give

some indication of the evidence which is rejected and the reasons for doing so.  *Id.*  As the

court stated in *Burnett*, "'[i]n the absence of such an indication, the reviewing court cannot tell

if significant probative evidence was not credited or simply ignored.'"  *Id.* at 121 (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

The ALJ made two particular errors in his assessment of Plaintiff's residual functional capacity: 1) he gave significant weight to the residual functional capacity assessments of two non-physician evaluators and 2) he failed to discuss Plaintiff's consultation with Dr. Mroz and her final visit with Dr. Start. As to the first issue, the ALJ assigned "significant weight" to the two state agency assessments that Plaintiff could perform light work.[1] Individuals whose opinions are considered "acceptable medical sources" and entitled to substantial weight in certain circumstances include licensed physicians or psychologists and are the only sources whose opinions can establish a medically determinable impairment. *Social Security Ruling ("SSR") 06-03p*, 2006 WL 2329939 at *1-2 (S.S.A. 2006). Neither Ms. Clover nor Ms. Coscoran were acceptable medical sources under the regulations and only qualify as an "other source" under 20 C.F.R. § 404.1513 (d)(1).

As an additional issue, the two evaluators did not even examine Plaintiff, but instead performed a record review. Controlling or "significant" weight is generally relegated to a claimant's treating or consulting physicians who have at least examined that individual. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"

---

[1] The ALJ asserts that at least one of these assessments opines that Plaintiff can perform "medium work," however, neither of these opinions suggest that Plaintiff can lift over fifty pounds at a time as required by 20 C.F.R. § 404.1567.

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422,

429 (3d Cir. 1999)); *see also Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir. 1989); *Podedworney v.*

*Harris*, 745 F.2d 210, 217-18 (3d Cir. 1984). And reports from consulting physicians who

have examined the claimant and rendered assessments on conditions within their respective

area of expertise are to be given appropriate evidentiary weight, which will vary based on the

circumstance and the other medical evidence presented. *Gordils v. Secretary of Health and*

*Human Services*, 921 F.3d 327, 328 (1ˢᵗ Cir. 1990) (*citing Rodriguez v. Secretary of Health and*

*Human Services*, 647 F.2d 218, 223 (1ˢᵗ Cir. 1981) (weight to be afforded a

consulting/examining physician's report "will vary with the circumstances, including the nature

of the illness and the information provided the expert."). It is therefore evident that the ALJ

gave inappropriate weight to these reports.

      This assignment of weight is further compounded by the failure of the ALJ to discuss

all of the relevant medical evidence including a consultation with Dr. Mroz of the Cleveland

Clinic, which led to a notation of paraspinal atrophy and Dr. Start's final examination of

Plaintiff in December 2007. (R. 345). In his opinion the ALJ concluded that Plaintiff's chronic

neck pain "appear[ed] significantly improved" due to the June 2007 records of Dr. Start. (R.

25). Although the ALJ asserted that Plaintiff had "full range of motion" in her neck, this

assertion was not supported in the record. (R. 24, 360-362). The ALJ then stated that "there

[was] no further evidence from Dr. Start to consider, which is indicative of no need for

continued and frequent follow-up despite the claimant's alleged continued chronic pain

complaints." (R. 25). As was noted above, Plaintiff did return to Dr. Start with complaints of

chronic pain and he noted her posture, flexing, and extending difficulties in both the back and

neck. (R. 358-359). These records are not supportive of the conclusion that Plaintiff's pain had "significantly improved" and this assertion, therefore, was not supported by substantial evidence. Due to these errors, it is recommended that this case be remanded to the ALJ for further proceedings.

### 2. *Plaintiff's Credibility*

Plaintiff raises additional issues relating to the assessment of her credibility. In his opinion, the ALJ concluded that Plaintiff's subjective complaints had "some merit." (R. 25). Plaintiff asserts that this assessment fails to adequately take into account her well-documented struggles with pain as evidenced by the medical record.

The ALJ must give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986). Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.*

Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the

extent to which it affects the individual's ability to work.  This obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d

358, 362 (3d Cir. 1999). If an ALJ concludes that the claimant's testimony is not credible, the

specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642

F.2d at 705. The Court of Appeals has stated:

> in all cases in which pain or other symptoms are alleged, the
> determination or decision rationale must contain a thorough
> discussion and analysis of the objective medical and the other
> evidence, including the individual's complaints of pain or other
> symptoms and the adjudicator's personal observations.  The
> rationale must include a resolution of any inconsistencies in the
> evidence as a whole and set forth a logical explanation of the
> individual's ability to work.

*Schaudeck*, 181 F.3d at 433.

Given, the ALJ's conclusion, based on inadequate evidence, that Plaintiff's pain had

"significantly improved," it is evident that his assessment of Plaintiff's testimony and reports

regarding pain were similarly flawed. While Plaintiff evidently received short-term relief from

the facet block administered by Dr. Bingham and some additional relief from narcotic pain

relievers like Vicodin, the ALJ has failed to support his conclusions regarding the improvement

of Plaintiff's pain.

### 3.	*Plaintiff's Depression*

Plaintiff's third argument encompasses the ALJ's step two determination that

Plaintiff's "medically determinable mental impairment of depression" as diagnosed by Dr. Start

did not cause more than "minimal limitation in the claimant's ability to perform basic mental

work." (R. 18). He concluded that Plaintiff's depression was non-severe. *Id*. Plaintiff argues

that her depression met the Third Circuit's standard and was severe and also should have been considered in conjunction with her other ailments.

An impairment is severe if it imposes significant restrictions in the ability to perform basic work activities. Social Security Ruling 85-28. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003) *citing* SSR 85-28. "The severity step...should only be used to screen out *de minimis* claims." *Roberts v. Massanari,* 2001 WL 1580241, *3-4 (E.D.Pa., Dec. 10, 2001)(citing *Bailey v. Sullivan,* 885 F.2d 52, 56-7 (3d Cir.1989)).

In support of his determination that Plaintiff's depression had a minimal impact on her ability to work and thus was non-severe, the ALJ utilized the "paragraph B requirements" of section 12.00C of the Listing of Impairments. The four criteria are activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ concluded that Plaintiff had no limitation to mild limitation in these areas of functioning, in partial reliance on the psychiatric review technique from June 2006. (R. 18). It is evident from the record that Plaintiff reported difficulties with concentration and focus, mostly in relation to her pain. Dr. Start recorded his concerns regarding the relationship between Plaintiff's pain and depression in both his June 2007 and December 2007 records. (R. 357-359, 361-362). He noted that her pain was affecting her concentration, mentation, motivation, mood, self-esteem, sleep, and family life. *Id*.

Since the psychiatric review technique was performed based on a review of records from prior to June 2006 and serious concerns of depression were not raised until June 2007, the ALJ's rationale is not supported by substantial evidence. The failure of the ALJ to review the December 2007 records of Dr. Start is also significant in this respect since it also included discussion of depression symptoms. Secondarily, the reviewing psychiatrist never examined Plaintiff and based his opinions strictly on a review of Plaintiff's records. Seemingly, the ALJ went on to consider Plaintiff's depression in the residual functional capacity assessment, however, as this case will be remanded, the issue of severity should be revisited.

### 4. New Evidence

In an unrelated argument, Plaintiff contends that this case should be remanded based on evidence obtained after the opinion of the ALJ was rendered and the case was appealed to the Appeals Council. Attached as Exhibit A to Plaintiff's Brief in support of her motion for remand is a medical record from the office of Dr. Mroz dated April 25, 2007. (Pl. Brief, Doc. No. 3, Exhibit A).

The United States Court of Appeals for the Third Circuit has set forth guidelines for determining when a "new evidence" remand is proper under § 405(g): "[T]he evidence must first be "new" and not merely cumulative of what is already in the record. Second, the evidence must be "material;" it must be relevant and probative.... Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination. Finally the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record." *Szubak v. Secretary of Health and Human Servs.,* 745 F.2d 831, 833 (3d Cir.1984) (citations omitted); *see*

*also Cruse v. Astrue*, 2010 WL 1133423, * 4-5 (W.D.Pa. March 23, 2010)(where a physician's report did not set forth opinions relating to physical limitations or inability of the claimant to work, there is no reasonable probability that it would have changed the outcome of the case.) In order to satisfy the "materiality" requirement, "the new evidence [must] relate to the time period for which benefits were denied, and [must] not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.*

In light of the fact that it is recommended that this case be remanded on other grounds, as noted above, this issue is moot. On remand, this evidence may be submitted and considered by the ALJ, thus allowing for its incorporation into the formal record.

**III.     Conclusion**

For the reasons stated above, it is recommended that the Motion for Summary Judgment filed by Defendant at [Doc. No. 18] be denied. It is further recommended that the Motion for Summary Judgment filed by the Plaintiff at [Doc. No. 16] be granted insomuch as it requests a remand not inconsistent with this opinion. In addition, it is recommended that Plaintiff's Motion for Remand based on New Evidence at [Doc. No. 12] is moot and should be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.1.4.(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

/s/ Susan Paradise Baxter
Susan Paradise Baxter
United States Magistrate Judge

cc: All counsel of record

U.S. District Judge Sean J. McLaughlin